**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

DAVID WILSON PEPE,

                    Plaintiff,                              CIVIL ACTION NO. 1:14-CV-02270

         v.                                                                (CALDWELL, J.)
                                                                            (MEHALCHICK, M.J.)
MARIROSA LAMAS, et al.,

                    Defendants.

## REPORT AND RECOMMENDATION

This is a civil rights action initiated upon the filing of a complaint in this matter on November 28, 2014 by *pro se* prisoner Plaintiff David Wilson Pepe, seeking injunctive relief and an award of compensatory and punitive damages for alleged claims of retaliation. (Doc. 1). Pending before this Court is Defendants' motion to dismiss. (Doc. 18). For the reasons provided herein, this Court recommends granting Defendants' motion.

### I.   FACTUAL BACKGROUND

*Pro se* Plaintiff David Wilson Pepe filed the instant civil rights action pursuant to 42 U.S.C. § 1983 on November 28, 2014, alleging claims of retaliation against Marirosa Lamas, Wilbert Matthews, Michael Prevost, Dawn Prevost, L. McConnell, R. Chism, Rebecca Reifer, and Wally Dittsworth, prison administrators and officials employed at the State Corrections Institution at Benner, in Bellefonte, Pennsylvania ("SCI-Benner"). (Doc. 1). The complaint, memorandum, and attached exhibits, taken together, paint a picture of retaliatory action towards Pepe stemming from a § 1983 lawsuit he filed in 2007 in the United States District Court for the Western District of Pennsylvania while incarcerated at the State Corrections Institution at Cresson in Cresson, Pennsylvania. ("SCI-Cresson"). Specifically, Pepe filed suit

against various Department of Corrections employees at SCI-Cresson, who he alleged were deliberately indifferent to his exposure to second-hand tobacco smoke, or "environmental tobacco smoke," in violation of the Eighth Amendment to the United States Constitution. *Wilson v. Burks*, 423 F. App'x 169 (3d Cir. 2011) (Doc. 1, at 1). At the outset of that litigation, Pepe received a prisoner authorization form from the court, which required a signature from Pepe in order to begin deducting the filing fee from Pepe's inmate account. Pepe alleges he sent the forms to Dawn Prevost in the inmate account office at SCI-Cresson in November of 2007, but she never returned the forms to him as he requested. (Doc. 2, at 1). As a result, Pepe submitted an inmate request form on November 27, 2007, to Rebecca Reifer, an assistant to the Superintendent of SCI-Cresson, to complain about Dawn Prevost's failure to return the authorization forms. (Doc. 2, at 1). Pepe alleges that Rebecca Reifer assured him that the accounts department would forward the paperwork to the court on his behalf. (Doc. 2, at 10). However, he alleges that the court did not receive his authorization and thus, he was forced to refile the authorization forms on his own. (Doc. 2, at 2).

Pepe was subsequently transferred to the SCI-Benner on April 16, 2013, and was assigned to work in food services, apparently in the midst of his litigation against personnel at SCI-Cresson. While working in food services, Michael Prevost, Pepe's kitchen supervisor, who is also incidentally married to Dawn Prevost, the inmate accounts administrator at SCI-Cresson, began taking an abnormal interest in Pepe's lawsuit against officials at SCI-Cresson, in that he had "been talking about [his] lawsuit case against SCI-Cresson every[ ]time [he] looked around." (Doc. 2, at 2). On April 18, 2013, Pepe rejected a settlement offer in his previously-filed lawsuit against SCI-Cresson officials. (Doc. 2, at 2). According to Pepe, the series of incidents forming the basis of his retaliation claims in the instant action began a few weeks after

he rejected the settlement offer by Michael Prevost. Pepe asserts that on May 18, 2013, Michael Prevost retaliated against him by filing a "bogus" misconduct charge, designated as "Class 1, #35-Refusing to Obey an Order," for becoming argumentative with him about doing the dishes. (Doc. 2, at 21, 26).[1]

On May 30, 2013, Pepe was required to attend an informal misconduct hearing with respect to the May 18, 2013 misconduct charge issued by Michael Prevost. The hearing was held by Wilbert Matthews, his unit supervisor, who Pepe alleges accused him of lying. (Doc. 2, at 2). Pepe further contends that the informal misconduct hearing was not "valid," as it was not conducted pursuant to the DOC handbook. (Doc. 2, at 3). Pepe does not expressly state the nature of the sanction Wilbert Matthews imposed. However, from what can be gleaned from the responses to Pepe's inmate requests and grievances attached to his complaint, it appears likely that Pepe was terminated from his position in food services for a period of time.[2]

Pepe proceeded to file Grievance Number 460925 to address his complaints with respect to Michael Prevost[3], which he subsequently appealed. (Doc. 2, at 4). On July 11, 2013, Marirosa Lamas, Superintendent of SCI-Benner, upheld the grievance officer's response to Pepe's initial grievance. Specifically, she noted that Michael Prevost and another supervisor

---

[1] That same day, Pepe sent an inmate request slip to Wally Dittsworth, the Department of Corrections Food Services Manager, to express his objections to the misconduct report issued to him by Michael Prevost, but received no response from him. Pepe's claims against Wally Dittsworth stem from the fact that he never received a response to these objections.

[2] On May 31, 2013, Pepe submitted an inmate request form to Captain R. Chism to address his complaints regarding the informal hearing with Wilbert Matthews, but received no response, thus forming the basis of Pepe's claims against Captain R. Chism. (Doc. 3, at 48).

[3] Pepe does not attach the initial grievance or the initial grievance response to the complaint.

were both interviewed with respect to the incident and that Pepe's "recollection of the events differ[ed] from the both of them." (Doc. 2 at 30). However, she advised Pepe that he would "be permitted to reapply for a dietary job when [he is] eligible." (Doc. 2, at 29, 30). On the basis of that representation, Pepe filed an inmate request to Ms. Price, a kitchen supervisor, on July 31, 2013, seeking to be reinstated to his former kitchen position. (Doc. 2, at 32). Pepe received a response to his inmate request from both Ms. Price and Michael Prevost. Ms. Price indicated that there were no job openings at the time. Michael Prevost unequivocally rejected Pepe's request and noted the following: "You have been removed from all areas of food services." (Doc. 2, at 32). Pepe insists that Michael Prevost's refusal to reinstate him to his former position was yet another act of retaliation taken against him, especially considering that Superintendent Marirosa Lamas, Michael Prevost's "own boss," had clearly advised Pepe that he would be permitted to work in the kitchen again once he was eligible. (Doc. 2, at 31, 32).

Pepe filed Grievance Number 472114 to complain of Michael Prevost's refusal to reinstate Pepe to his prison job. On October 1, 2013, Marirosa Lamas upheld the grievance officer's response on appeal[4], but indicated to Pepe that she had contacted Wally Dittsworth "and was advised that [he] could reapply [to work back in the kitchen] and [that his] name [would] be added to the waiting list." (Doc. 2, at 35). Pepe maintains in his complaint that Michael Prevost has nevertheless continued to "black ball" him from working in the kitchen. (Doc. 2, at 5).

Pepe alleges that he was subjected to retaliation again on August 6, 2013, in the form of a second false misconduct report issued by L. McConnell, "one of [Michael] Prevost's very

---

[4] Pepe does not attach the initial grievance or initial grievance response to his complaint.

good co-workers," for taking unauthorized food from the dining room. (Doc. 2, at 4). That same day, Pepe filed Grievance 472223 in response to this misconduct charge on the basis that he was not present in the dining hall on the day he was accused of having taken an additional food tray without paying, but rather, was in the prison library at the time. (Doc. 2, at 37). On appeal, Marirosa Lamas upheld the grievance in Pepe's favor upon confirming with the law librarian that Pepe was, in fact, in the library at the time of the incident. (Doc. 2, at 5).

Related to his other claims, Pepe also briefly notes in his complaint that SCI-Benner officials retaliated against him by opening his legal mail sent by an attorney in his absence and by "dropp[ing] [him] down to a custody level #3." (Doc. 2, at 5).

On February 6, 2015, Defendants filed a motion to dismiss for failure to state a claim (Doc. 18), together with a brief in support of the motion. (Doc. 19). On March 2, 2015, Pepe filed a "Letter Brief," construed as a brief in opposition to Defendants' motion to dismiss. (Doc. 25). To date, Defendants have not filed a reply brief. Given that the time period for Defendants to file a reply brief has passed, this motion is now ripe for disposition.

## II. STANDARD OF REVIEW

### A. RULE 12(B)(6) STANDARD

Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit, discussing the evolving standards governing pleading practice in federal court, has stated in relevant part:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), pleading standards

have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler*, 578 F.3d at 209-10.

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). A plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court of the United States held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

6

III. DISCUSSION

    A. STATUTE OF LIMITATIONS

Defendants argue that any claims against Defendants Rebecca Reifer, and Dawn Prevost are barred by the statute of limitations. (Doc. 19, at 9). A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds if it is apparent on the face of the complaint that the action was untimely filed and the affirmative defense was also clearly plead by defendants. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994). The actions forming the basis of the complaint occurred in the Commonwealth of Pennsylvania; thus, Pennsylvania's two-year statutory period applies to his § 1983 claims. *See Kost v. Kozakiewicz*, 1 F.3d 176, 189-90 (3d Cir. 1993) (holding that Pennsylvania's two-year statute of limitations applies to claims for violations of constitutional rights brought pursuant to 42 U.S.C. § 1983). The limitations period begins when the plaintiff knows or had reason to know of the injury forming the basis for the federal civil rights action. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991).

Here, the allegations pertaining to Dawn Prevost and Rebecca Reifer occurred between November 27, 2007 and December 12, 2007, more than two years prior to the filing of the complaint in this matter on November 28, 2014. (Doc. 1; Doc. 2, at 13). Accordingly, the Court recommends dismissal of Rebecca Reifer and Dawn Prevost from the instant action, as the two-year statute of limitations bars Pepe's § 1983 claims against them.[5]

---

[5] While Pepe names Rebecca Reifer and Dawn Prevost in the caption of his complaint, he appears to clarify in his brief in opposition to Defendants' motion to dismiss that "the only reason[ ] that [he] had ever stated [ ] what Ms. Dawn Prevost[ ] and Ms. Rebecca Reifer[ ] had done in . . . not mailing out [his] "Legal Papers" to the U.S. District Court[ ] of the Western District of Pennsylvania[ ] [w]as to clearly show this Honorable Court . . . of the motives as to
*(footnote continued on next page)*

B.  PERSONAL INVOLVEMENT

Defendants also seek to dismiss Defendants R. Chism, Wally Distworth, and Marirosa Lamas from the complaint for their lack of personal involvement in the alleged constitutional misconduct. (Doc. 19 at 11).

To state a claim under § 1983, a plaintiff must show that the defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. "A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). An allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to § 1983 liability. *Padilla v. Beard*, No. CIV. 1:CV-06-0478, 2006 WL 1410079, at *3 (M.D. Pa. May 18, 2006); *Rode*, 845 F.2d at 1207.

The filing of a grievance is not sufficient to show the actual knowledge required for personal involvement. Moreover, participation in the "after-the-fact" review of a grievance is not enough to establish personal involvement. *See Pressley v. Beard*, 266 Fed. Appx. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these [supervisory] defendants and any

---

why [Michael] Prevost had acted out against [him] . . . at SCI-Benner." (Doc. 25, at 2). Thus, to the extent Pepe does not intend to assert claims against these Defendants, it is alternatively recommended that these Defendants be dismissed from the instant action.

additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 Fed. Appx. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); *Ramos v. Pa. Dep't of Corr.*, No. CIV. 4:CV-06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); *Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D. Pa.1997), *aff'd,* 142 F.3d 430 (3d Cir. 1998) (noting that prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

Here, Pepe alleges that Defendants R. Chism, Wally Distworth, and Marirosa Lamas, occupying administrative or supervisory positions at SCI-Benner, failed to respond or responded in an unsatisfactory manner to his grievances. (*See* Doc. 2, at 3, 30). However, participation, or lack of participation in an administrative review process is an insufficient basis for § 1983 liability. As a review of the complaint and corresponding attachments reveals no facts alleging personal involvement by these prison officials and administrators in the allegedly unconstitutional conduct, it is recommended that Defendants R. Chism, Wally Distworth, and Marirosa Lamas be dismissed from the instant action. [6]

---

[6] Further, this Court is guided by the well-established principle that inmates "do not have a constitutional right to a prison grievance system." *Arroyo v. Li*, No. 3:CV-13-1506, 2014 WL 4294506, at *3 (M.D. Pa. Aug. 28, 2014)(citing *Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 137–38 (1977); *Speight v. Sims*, No. 08–2038, 2008 WL 2600723 at *1 (3d Cir. Jun 30, 2008)). Accordingly, any attempt by Pepe to establish liability against these Defendants solely
*(footnote continued on next page)*

C.  Retaliation Claims Against Michael Prevost & L. McConnell

In order to establish a *prima facie* case of First Amendment retaliation, a plaintiff must allege: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *see also Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir.2001); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000).

In liberally construing the complaint, it appears that Pepe has alleged five separate instances of retaliation resulting from the filing of his lawsuit against personnel at SCI-Cresson in 2007: (1) Michael Prevost issuing of a false misconduct report against Pepe; (2) Michael Prevost denying Pepe reinstatement to his kitchen prison job; (3) L. McConnell issuing a second misconduct report; (4) prison officials opening his legal mail addressed from his attorney outside his presence; and (5) prison officials interfering with his custody level.[7]

---

based upon the substance or lack of response to his institutional grievances does not, by itself, support a constitutional due process claim. *See Alexander v. Gennarini*, 144 Fed. Appx. 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); *Okey v. Strebig*, 531 F. App'x 212, 215 (3d Cir. 2013) *cert. denied*, 134 S. Ct. 446 (2013) ("The failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation.") (citations omitted). Thus, to the extent Plaintiff seeks to recover for prison officials failure to respond to his grievances, such a claim is not cognizable under § 1983.

[7] Pepe claims that he has been subjected to retaliation in the form of SCI-Benner officials "going through the [P]laintiff's 'Legal Mail,' from an attorney who had [written] him." (Doc. 2, at 5). He also alleges that staff members retaliated against him, "because [he] was dropped down to a custody level #3" from a "custody level #2." (Doc. 2, at 5). However, these retaliation claims are deficient in that Pepe does not allege any facts implicating the above-captioned Defendants in the alleged misconduct, nor does he suggest a causal link between the alleged "mail tampering" or "improper custody determination" and the lawsuit he filed in 2007 against officials at SCI-Cresson. Thus, this Court recommends dismissal of these claims without prejudice.

Defendants do not contest that Pepe was engaged in a constitutionally protected activity by filing a lawsuit, or that an adverse action was taken against him by filing misconduct reports against him and refusing to reinstate him to his prison job, *see Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981); rather, Defendants contend that any allegation of retaliation stemming from the lawsuit Pepe filed against personnel at SCI-Cresson back in 2007 does not form the basis of a viable retaliation claim, as such allegations "involve[ ] disparate acts, by different actors, which are separated by a divide of at least six years." (Doc. 19, at 8).

Here, in drawing all reasonable inferences and resolving all factual disputes in favor of Pepe, the Court agrees with Defendants that Pepe's allegation of causation is far too attenuated to plausibly plead a retaliation claim with respect to the issuance of the misconduct reports and the denial of reinstatement to a previously held prison job. Indeed, Pepe has failed to allege facts sufficient to support the inference that filing a lawsuit against personnel at SCI-Cresson in 2007 was a substantial motivating factor in Michael Prevost's and L. McConnell's subsequent filing of purportedly fabricated misconduct reports against Pepe, and Michael Prevost's refusal to reinstate him to his prison job. Specifically, with respect to the retaliation claims against Michael Prevost, while Pepe argues that Michael Prevost issued the false misconduct report a "few weeks" after Pepe rejected the settlement offer in his lawsuit against officials at SCI-Cresson, and that Michael Prevost knew about the lawsuit from his wife who worked in inmate accounts at SCI-Cresson, the temporal proximity of Michael Prevost's actions to Pepe's rejection of the settlement offer does not suggest a causal link, as it is evident from the complaint that neither Michael Prevost, nor his wife, were named as defendants in the lawsuit

Pepe filed in 2007.[8] *Compare with Bond v. Horne*, 553 F. App'x 219, 223 (3d Cir. 2014) (holding that a misconduct report filed by prison official against inmate shortly after inmate settled a previous lawsuit against that prison official would, if true, "certainly establish the requisite causal connection between [inmate's] protected activity and the alleged adverse action taken against him"). *See also Thomas v. McCoy*, 467 Fed. Appx. 94, 96 (3d Cir. 2012); *Victor v. Lawler*, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010) ("[C]ourts have rejected a retaliation claim against one defendant based on a grievance filed against another defendant."); *Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 19, 2009) (holding that to the extent the grievances and pending lawsuit were not filed against the moving defendants, "there is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others"); *Royster v. Beard*, 308 F. App'x 576, 579 (M.D. Pa. 2008) (concluding that the plaintiff failed to satisfy the causal connection requirement in his retaliation claim against defendant because he could not identify a previously filed grievance in which he was named).

This reasoning applies to L. McConnell as well, as L. McConnell was not named as a defendant in the previous lawsuit against officials at SCI- Cresson. Moreover, while Pepe indicates that L. McConnell is "[o]ne of [Michael] Prevost['s] very good co-workers," and that the misconduct report was subsequently upheld in his favor, Pepe neither alleges facts

---

[8] To the extent that Pepe has alleged that Michael Prevost issued him the misconduct in 2013 in retaliation for Pepe making an informal complaint against his wife in 2007, Pepe has failed to state a claim, as these events are separated by a significant temporal divide of six years. *See, e.g., DeFranco v. Wolfe*, 387 F. App'x 147 (3d Cir. 2010); *Bailey v. Commercial Nat'l Ins. Co.*, 267 F. App'x 167 (3d Cir.2008) (finding four months temporal proximity insufficient); *Conklin v. Warrington Tp.*, No. 06–2245, 2009 WL 1227950 (M.D. Pa. April 30, 2009) (finding two months temporal proximity insufficient); *Rogers v. Delaware, Dept. of Public Safety/DMV*, 541 F.Supp.2d 623, 627 (D. Del. 2008) (finding 10 months temporal proximity insufficient); *Brown v. Boeing*, 468 F. Supp. 2d 729 (E.D. Pa. 2007) (finding that 3–4 months temporal proximity insufficient).

demonstrating that L. McConnell knew that Pepe filed the lawsuit, nor suggests a temporal proximity between the filing of the lawsuit and the alleged fabrication of the second misconduct report.

As Pepe fails to allege facts from which one can infer a causal link between his 2007 lawsuit and the alleged retaliatory conduct, this Court recommends dismissal of Pepe's First Amendment retaliation claims against Michael Prevost and L. McConnell for failure to state a claim.[9]

### D.  Due Process Claim Against Wilbert Matthews

In liberally construing Pepe's complaint, it appears that Pepe contends that the hearing officer, Wilbert Matthews, violated his procedural due process rights under the Fourteenth Amendment by failing to hold the informal misconduct hearing , "within 7[ ]working days [ ] [b]y the D.O.C.'s handbook rules," and by acting in an unprofessional manner during the hearing. (Doc. 2, at 19). "In analyzing a due process claim, the threshold question is whether the complaining party has been deprived of a protected liberty or property interest." *Thomas v. Rosemeyer*, 199 F. App'x 195, 197 (3d Cir. 2006)(citing *Shoats v. Horn,* 213 F.3d 140, 143 (3d Cir. 2000)). "In a prison context, due process protection is limited to those situations where the deprivation rises to the level of an 'atypical and significant hardship on the inmate in relation to

---

[9] As addressed at length in the text of this Report and Recommendation, Pepe appears to solely attribute the source of the retaliatory conduct he was allegedly subjected to at SCI-Benner to the lawsuit he filed against SCI-Cresson officials in 2007. However, in affording Pepe all possible latitudes as a *pro se* plaintiff, the Court cannot overlook the possibility that while Pepe has not alleged as much, he may nevertheless have potentially meritorious retaliation claims against Michael Prevost for refusing to reinstate Pepe to his prison job in retaliation for filing Grievance Number 460925 against him, and L. McConnell for filing a second misconduct report in retaliation for Pepe filing Grievance 460925 against Michael Prevost. Thus, to the extent Pepe intends to assert these claims, he will have the opportunity to clearly, concisely, and directly set forth these specific claims in an amended complaint, if he chooses to do so.

the ordinary incidents of prison life.'" *Id.* (citing *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). As Defendants argue, Pepe does not assert a liberty interest for which he is entitled to due process protection. (Doc. 19, at 13). While Pepe generally complains that he has been "black balled" from obtaining prison employment in food services (Doc. 2, at 5), it is well established that an inmate's expectation of obtaining a specific prison job does not implicate a property interest under the Fourteenth Amendment. *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989); *see also Brian v. Werner*, 516 F.2d 233, 240 (3d Cir. 1975). Accordingly, it is recommended that Pepe's claims against Wilbert Matthews be dismissed without prejudice.

E. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Pepe has not been given leave to amend his complaint previously in this matter. There is nothing to suggest that amendment of Pepe's claims against Defendants Marirosa Lamas, Wilbert Matthews, Michael Prevost, L. McConnell, R. Chism and Wally Dittsworth would be futile, nor is there any basis to believe it would be inequitable. However, Pepe's claims against Dawn Prevost and Rebecca Reifer are clearly barred by the statute of limitations, and thus, it would be futile to allow leave to amend. It is therefore recommended that Pepe be granted leave to amend his complaint within a specified time period following dismissal of his claims against Defendants Marirosa Lamas, Wilbert Matthews, Michael Prevost, L. McConnell, R. Chism and Wally Dittsworth.

## IV. RECOMMENDATION

Based on the foregoing, it is recommended that:

1. The Defendant's motion to dismiss Plaintiff's amended complaint (Doc. 18) be **GRANTED** and the complaint (Doc. 1) be **DISMISSED** for failure to state a claim;

2. Plaintiff be granted leave to file an amended complaint against Defendants Marirosa Lamas, Wilbert Matthews, Michael Prevost, L. McConnell, R. Chism and Wally Dittsworth within a specified period of time following dismissal of his original complaint; and

3. This matter be remanded to the undersigned for further proceedings.


**BY THE COURT:**


Dated: July 28, 2015                    *s/ Karoline Mehalchick*
                                        **KAROLINE MEHALCHICK**
                                        **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

DAVID WILSON PEPE,

                  Plaintiff,

    v.

MARIROSA LAMAS, et al.,

                  Defendants.

CIVIL ACTION NO. 1:14-CV-02270

(CALDWELL, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **July 28, 2015**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: July 28, 2015

                           *s/ Karoline Mehalchick*
                           **KAROLINE MEHALCHICK**
                           **United States Magistrate Judge**