## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DAVID WILSON PEPE,

                    Plaintiff,

      v.

MARIROSA LAMAS, et al.,

                    Defendants.

CIVIL ACTION NO. 1:14-CV-02270

(CALDWELL, J.)
(MEHALCHICK, M.J.)

### REPORT AND RECOMMENDATION

       This is a civil rights action initiated upon the filing of a complaint in this matter on November 28, 2014 by *pro se* prisoner-Plaintiff David Wilson Pepe, seeking injunctive relief and an award of compensatory and punitive damages under 42 U.S.C. §1983 against a number of administrators and personnel employed at the State Correctional Institution at Benner ("SCI-Benner") for alleged violations of the First and Fourteenth Amendments to the United States Constitution. (Doc. 1). An amended complaint was filed in this action on September 21, 2015. (Doc. 31). Pending before this Court is Defendants' motion to dismiss Plaintiff's amended complaint. (Doc. 32). For the reasons provided herein, it is respectfully recommended that Defendants' motion to dismiss (Doc. 32) be granted in part.

### I.  FACTUAL BACKGROUND

       *Pro se* Plaintiff David Wilson Pepe filed the instant civil rights action pursuant to 42 U.S.C. § 1983 on November 28, 2014, against Marirosa Lamas, Wilbert Matthews, Michael Prevost, Dawn Prevost, L. McConnell, R. Chism, Rebecca Reifer, and Wally Dittsworth, prison administrators and officials employed at either SCI-Benner or the State Correctional Institution at Cresson in Cresson, Pennsylvania ("SCI-Cresson"). (Doc. 1). The complaint

concerned a series of retaliatory incidents Pepe was allegedly subjected to at SCI-Benner as a result of having filed a § 1983 lawsuit in 2007 in the United States District Court for the Western District of Pennsylvania against a number of personnel at SCI-Cresson, and for having subsequently rejected a proposed settlement offer in that case. *See Wilson v. Burks*, 423 F. App'x 169 (3d Cir. 2011); (Doc. 1, at 1). On February 6, 2015, Defendants responded to the complaint by filing a motion to dismiss. (Doc. 18). On July 28, 2015, the undersigned Magistrate Judge recommended granting Defendants' motion to dismiss with leave to amend on the basis that: (1) the claims against Rebecca Reifer and Dawn Prevost were barred by the statute of limitations;[1] (2) R. Chism, Wally Dittsworth, and Marirosa Lamas lacked personal involvement in the alleged wrongdoings as required to state a cause of action under § 1983; (3) the causal connection between the lawsuit filed at SCI-Cresson in 2007 and the purportedly adverse actions taken by SCI-Benner employees in 2013 was too attenuated to sustain a viable First Amendment retaliation claim; and, (4) the allegations concerning Pepe's removal from his prison employment assignment in food services did not implicate a property or liberty interest and thus, were insufficient to trigger the Fourteenth Amendment's due process protections. (Doc. 29). On August 15, 2015, the District Judge adopted the Report and Recommendation, and permitted Pepe thirty (30) days to file an amended complaint to cure the complaint's pleading defects.

On September 21, 2015, Pepe filed an amended complaint together with supporting exhibits. (Doc. 31). The amended complaint largely repeats the factual allegations in the original complaint. Specifically, Pepe alleges that on May 18, 2013, Michael Prevost, Pepe's

---

[1] The claims against Rebecca Reifer and Dawn Prevost were dismissed without leave to amend, however.

kitchen supervisor, retaliated against him by issuing Pepe a "bogus" misconduct charge for becoming argumentative with him about doing the dishes. (Doc. 31, at 1).

On May 30, 2013, Pepe attended an informal misconduct hearing with respect to the May 18, 2013 misconduct charge issued by Michael Prevost. The hearing was held by Wilbert Matthews, his unit supervisor, who accused Pepe of lying at the informal hearing regarding the incident forming the basis of the misconduct charge. (Doc. 31, at 9). Pepe further contends that the informal misconduct hearing was not "valid" in that it was not conducted in accordance with Department of Corrections policies. (Doc. 31, at 9).[2]

Pepe proceeded to file Grievance Number 460925 to address his complaints with respect to Michael Prevost. (Doc. 31, at 1). On July 11, 2013, Marirosa Lamas, Superintendent of SCI-Benner, upheld the grievance officer's response to Pepe's initial grievance. Specifically, she noted that Michael Prevost and another supervisor were both interviewed with respect to the incident and that Pepe's "recollection of the events differ[ed] from the both of them." (Doc. 31, at 17). However, she advised Pepe that he would "be permitted to reapply for a dietary job when [he is] eligible." (Doc. 31, at 17). On the basis of that representation, Pepe filed an inmate request to Ms. Price, a kitchen supervisor, on July 31, 2013, seeking to be reinstated to his former kitchen position. (Doc. 31, at 19). Pepe received a response to his inmate request from both Ms. Price and Michael Prevost. (Doc. 31, at 19). Ms. Price indicated that there were no job openings at the time. Michael Prevost unequivocally rejected Pepe's request and noted the following: "You have been removed from all areas of food services." (Doc. 31, at 19). Pepe

---

[2] The amended complaint contains no allegations of the nature of the sanction Wilbert Matthews imposed. However, from what can be gleaned from the responses to Pepe's inmate requests and grievances attached to his amended complaint, it appears likely that Pepe was suspended or removed from his position in food services for a period of time.

insists that Michael Prevost's refusal to reinstate him to his former position was an act of retaliation taken against him for filing Grievance Number 460925, especially given that Superintendent Lamas, Michael Prevost's "own boss," had clearly advised Pepe that he would be permitted to apply to work in the kitchen again once he was eligible. (*See* Doc. 31, at 2 (Now this cannot be the 'norm' in the D[OC] of a work supervisor to take it upon him[self] . . . [i]n going against his boss['s] wishes, by him not rehiring the plaintiff to work[ ] back into the kitchen again." )).

Pepe filed Grievance Number 472114 to complain of Michael Prevost's refusal to reinstate Pepe to his prison job. (Doc. 31, at 38).  On October 1, 2013, Superintendent Lamas upheld the grievance officer's response on appeal, but indicated to Pepe that she had contacted Wally Dittsworth "and was advised that [he] could reapply [to work back in the kitchen] and [that his] name [would] be added to the waiting list." (Doc. 31, at 41). However, despite having received those assurances, Pepe maintains in his amended complaint that he continues to be "black balled" from working in the kitchen. (Doc. 31).

Pepe alleges that on August 6, 2013, he was subjected to retaliation again as a result of having filed Grievance Number 460925 against Michael Prevost, when L. McConnell, one of Michael Prevost's "good co-workers," issued Pepe a second false misconduct report for taking unauthorized food from the dining room. (Doc. 31, at 2). That same day, Pepe filed Grievance 472223 in response to this misconduct charge on the basis that he was not present in the dining hall on the day he was accused of having taken an additional food tray without paying, but rather, was in the prison library at the time. (Doc. 31, at 3). On appeal, Superintendent Lamas upheld the grievance in Pepe's favor upon confirming with the law librarian that Pepe was, in fact, in the library at the time of the incident. (Doc. 31, at 23).

Defendants have filed a motion to dismiss Pepe's amended complaint for failure to state a claim (Doc. 32), together with a brief in support of the motion. (Doc. 33). In response, Pepe has filed a brief in opposition to Defendants' motion to dismiss. (Doc. 34). To date, Defendants have not filed a reply brief. Given that the time period for Defendants to file a reply brief has passed, this motion is now ripe for disposition.

## II.  STANDARD OF REVIEW

### A.  RULE 12(B)(6) STANDARD

Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit, discussing the evolving standards governing pleading practice in federal court, has stated in relevant part:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler*, 578 F.3d at 209-10.

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A court need not assume that a plaintiff can prove facts that the plaintiff has not alleged.

*Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). A plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court of the United States held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III. DISCUSSION

### A. LACK OF PERSONAL INVOLVEMENT

Defendants seek dismissal of Defendants R. Chism, Wally Distworth, and Marirosa Lamas from the amended complaint for their lack of personal involvement in the alleged constitutional misconduct.

To state a claim under § 1983, a plaintiff must show that the defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. "A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through

allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). An allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to § 1983 liability. *Padilla v. Beard*, No. CIV. 1:CV-06-0478, 2006 WL 1410079, at *3 (M.D. Pa. May 18, 2006); *Rode*, 845 F.2d at 1207.

The filing of a grievance is not sufficient to show the actual knowledge required for personal involvement. Moreover, participation in the "after-the-fact" review of a grievance is not enough to establish personal involvement. *See Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) (finding "an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement" requirement); *Pressley v. Beard*, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these [supervisory] defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); *Ramos v. Pa. Dep't of Corr.*, No. CIV. 4:CV-06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa.1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998) (noting that prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

Upon review of Pepe's amended complaint, it is clear that Pepe has failed to correct the pleading deficiencies identified by the Court in its July 28, 2015 Report and Recommendation with respect to properly alleging the personal involvement of Defendants R. Chism, Wally Distworth, and Marirosa Lamas. Specifically, Pepe continues to rely on allegations that these three Defendants occupying administrative or supervisory positions at SCI-Benner responded in an unsatisfactory manner to his grievances. (*See, e.g.,* Doc. 31, at 3-4; Doc. 31, at 6-8). Participation, or lack of participation, in an administrative review process is an insufficient basis for § 1983 liability. As a review of the amended complaint and corresponding attachments reveals no facts alleging personal involvement by these prison officials and administrators in the allegedly unconstitutional conduct, it is recommended that Defendants' motion to dismiss (Doc. 32), be granted and that R. Chism, Wally Distworth, and Marirosa Lamas be terminated from the instant action.

### B. Retaliation Claims Against Michael Prevost & L. McConnell

Liberally construed, the amended complaint appears to set forth First Amendment retaliation claims against Michael Prevost for his refusal to reinstate Pepe to his prison job in retaliation for filing Grievance Number 460925 and against L. McConnell for issuing a false misconduct report against Pepe for filing Grievance Number 460925 against Michael Provost.[3]

---

[3] By way of brief procedural background, Pepe's original complaint asserted the following acts of retaliation by personnel at SCI-Benner resulting from Pepe's rejection of a settlement offer in a lawsuit filed against personnel at SCI-Cresson in 2007: (1) Michael Prevost issuing of a false misconduct report against Pepe; (2) Michael Prevost denying Pepe reinstatement to his kitchen prison job; (3) L. McConnell issuing a second misconduct report; (4) prison officials opening his legal mail addressed from his attorney outside his presence; and (5) prison officials interfering with his custody level. The Court dismissed in its Report and Recommendation Pepe's First Amendment retaliation claims, citing Pepe's failure to allege facts sufficient to support the inference that filing a lawsuit against personnel at SCI-Cresson in
*(footnote continued on next page)*

To state a *prima facie* case of retaliation in violation of the First Amendment, a plaintiff must establish the following elements: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *see also Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000).   Guided by these specific pleading requirements, the Court is tasked with addressing whether Pepe has sufficiently advanced plausible First Amendment retaliation claims against Michael Prevost and L. McConnell.

### 1. Michael Prevost

With respect to Pepe's First Amendment retaliation claim against Michael Prevost, Defendants do not contest in their motion to dismiss that Pepe was engaged in a constitutionally protected activity by filing Grievance Number 460925 against Michael Prevost, or that an adverse action was taken against Pepe. *See Kelly v. York Cnty. Prison*, 340 F. App'x 59, 61 (3d Cir. 2009) (per curiam) (noting that the filing of a grievance is a constitutionally protected activity). Rather, Defendants generally contend that Pepe is unable to set forth any protected conduct that could have plausibly motivated the alleged acts of retaliation, as "[t]he only grievances that are mentioned in the [a]mended [c]omplaint are grievances that the

---

2007 was a substantial motivating factor in Michael Prevost's and L. McConnell's subsequent filing of purportedly fabricated misconduct reports against Pepe, Michael Prevost's refusal to reinstate him to his prison job, prison officials opening his legal mail, and prison officials changing his custody level. However, in dismissing these claims, the Court permitted Pepe to file an amended complaint, noting that in affording Pepe all possible latitudes as a *pro se* plaintiff, Pepe may have potentially meritorious retaliation claims against Michael Prevost and L. McConnell arising out of Pepe filing Grievance Number 460925.

Plaintiff filed after the actions occurred, and therefore could not have been a causal factor in the issuance of the misconducts." (Doc. 33, at 9).

As an initial matter, it appears to the Court upon review of Defendants' motion to dismiss that Defendants too narrowly construe Pepe's allegations of retaliation as they pertain to Michael Prevost. Defendants define the retaliatory action at issue in this case to be Michael Prevost's issuance of a "'bogus' informal misconduct" that resulted in Pepe's brief suspension from his employment position in food services. Based upon that characterization of Pepe's amended complaint, Defendants conclude that Pepe cannot establish that his filing of a grievance was a substantial or motivating factor in his suspension because his initial removal from food services occurred prior to his filing the grievance. However, Defendants do not address Pepe's contention that he was subjected to further retaliation sufficient to deter a similarly-situated inmate of ordinary firmness from exercising his constitutional rights in the form of Michael Prevost's subsequent refusal to authorize Pepe's reinstatement to his prison job. Indeed, Pepe principally premises liability on detailed allegations that Michael Prevost refused to reinstate Pepe to his job assignment upon Pepe regaining eligibility for prison employment, approximately one month after Pepe filed Grievance Number 460925 to complain about Michael Prevost's issuance of a false misconduct, which arguably constitutes an adverse action sufficient to support a claim of retaliation. *See Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981); *Watson v. Wetzel*, No. CIV.A. 11-281J, 2013 WL 501376, at *8 (W.D. Pa. Jan. 9, 2013), *report and recommendation adopted,* No. CIV.A. 11-281J, 2013 WL 504712 (W.D. Pa. Feb. 8, 2013), *aff'd sub nom. Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75 (3d Cir. 2014) ("[T]he refusal to reinstate a prisoner into his prison job may be sufficient to deter a prisoner of ordinary firmness from exercising his constitutional rights."). Thus, the Court assumes for purposes of

this analysis that the retaliatory *act* at issue here is the refusal to reinstate Pepe to his job assignment in food services. Having resolved the apparent discrepancy in the Court's and Defendants' framing of Pepe's retaliation claim as it relates to defining the adverse action taken by Michael Prevost, the Court is left with determining whether Pepe has adequately pled facts demonstrating a causal link between the filing of Grievance Number 460925 and the refusal to reinstate Pepe to his prison job assignment as required to satisfy the third element of a claim of First Amendment retaliation.

To evaluate the existence of a causal link between the constitutionally protected conduct and adverse action, the Third Circuit has adopted a burden-shifting analysis: the prisoner-plaintiff bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to take adverse action against him; once a prisoner has made his *prima facie* case, the burden then shifts to the defendant to prove by a preponderance of the evidence that he would have taken the same adverse action even in the absence of the protected activity, for reasons reasonably related to a penological interest. *Carter v. McGrady*, 292 F.3d 152, 157–58 (3d Cir. 2002); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

Overcoming that initial burden of showing the requisite causal connection between the constitutionally protected conduct and the adverse action requires that a plaintiff prove either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link . . . ." *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007) (citing *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 503–04 (3d Cir. 1997); *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920–21 (3d Cir. 1997)). In the absence of such proof, however, the plaintiff may show

that the "evidence gleaned from the record as a whole" provides an inference of causation. *DeFlaminis,* 480 F.3d at 267 (citing *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 281 (3d Cir. 2000)).

"Courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks, months or years separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation." *Victor v. Huber*, No. 3:12-CV-282, 2012 WL 2564892, at *9 (M.D. Pa. Feb. 28, 2012) (citing *See Killen v. N.W. Human Servs., Inc.,* No. 06–4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); *Farrell,* 206 F.3d at 279 n.6 (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); *Smith v. ABF Freight Sys., Inc.,* No. 04–2231, 2007 WL 3231969, at *11 (M.D. Pa. Oct. 29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); *Mar v. City of McKeesport,* No. 05–19, 2007 WL 2769718, at *4 (W.D. Pa. Sept. 20, 2007) (holding that temporal proximity of three months was insufficient to establish causation); *Fischer v. Transue,* No. 04–2756, 2008 WL 3981521, *10 (M.D. Pa. Aug. 22, 2008) (holding that temporal proximity of three weeks was insufficient to establish causation)). However, the Court is not limited to a determination of whether the temporal proximity between the protected activity and the alleged retaliatory act creates an inference of a causal connection to the exclusion of all other facts or circumstances potentially probative of causation. *Farrell,* 206 F.3d at 279; *Rauser,* 241 F.3d at 334 (noting that "suggestive temporal proximity" is relevant but not determinative of causation).

Here, while the decision to prohibit Pepe's return to his prison assignment itself does not raise an inference that Pepe's filing of a grievance was a substantial or motivating factor in that

decision, those pleadings, taken together with the exhibits attached to Pepe's amended complaint, sufficiently raise an inference of causation at this pleading stage. Indeed, the alleged factual circumstances forming the basis of Pepe's constitutional challenge that, immediately upon regaining eligibility for prison employment, Pepe was denied employment by the same official against whom he filed a grievance one month prior, when viewed in the light most favorable to Pepe, provide a basis for which an inference of causation can be drawn, especially when considering that the alleged retaliatory act (refusal to reinstate Pepe to his previously held prison job) could only be triggered upon the lapse of the employment probationary period imposed on Pepe. Those timing constraints—necessarily precluding the alleged retaliatory act from occurring until such time as Pepe was authorized to pursue reinstatement of his prison position—coupled with Michael Prevost's and Ms. Price's conflicting responses to Pepe's inmate request form seeking to be reinstated to his formerly held prison position in food services, and Superintendent Lamas's appeal response advising Pepe that he could reapply for a position in food services and that his "name will be added to the waiting list," allow for the inference of a causal link sufficient to withstand a motion to dismiss. (See Doc. 31, at 19 (copy of Pepe's inmate request form addressed to Ms. Price seeking reinstatement to prison job, which contains the handwritten response from Ms. Price that "I have no openings at this time," and the handwritten notation from Michael Prevost that "NO You have been removed from all areas of food services"); Doc. 31, at 42 (copy of Superintendent Lamas's appeal response in which she stats that "I contacted Mr. Dittsworth and was advised that you can reapply and your name will be added to the waiting list")).   Thus, the Court finds that Pepe has offered sufficient factual allegations at this stage of the proceedings to satisfy the causation element of a First Amendment retaliation claim.

Accordingly, as Pepe has stated a colorable First Amendment retaliation claim against Michael Prevost sufficient to withstand Defendants' motion to dismiss, it is recommended that Defendants' motion to dismiss be denied with respect to Pepe's retaliation claim against Michael Prevost.

### 2.   L. McConnell

With respect to Pepe's retaliation claim against L. McConnell for issuing him a false misconduct, Defendants note that Superintendent Lamas later retracted the misconduct and thus, the misconduct does not constitute an adverse action sufficient to sustain a retaliation claim. (Doc. 33, at 9). While filing a false misconduct report may constitute the type of action that would support a claim for retaliation in certain cases, here, the alleged retaliatory action—an issued misconduct charge that was subsequently dismissed—is not sufficiently adverse to deter a person of ordinary fitness from exercising his constitutional rights. Indeed, the Third Circuit has explicitly held that, absent the imposition of a penalty, a correctional officer's filing of a false misconduct report that is subsequently dismissed does not rise to the level of an "adverse action." *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (citing *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir. 2000)); *see also  Bridges v. Gilbert,* 557 F.3d 541, 555 (7th Cir. 2009) ("A single retaliatory charge that is later dismissed is insufficient to serve as the basis of a § 1983 action."). Pepe concedes that he was issued an informal misconduct that was later withdrawn by Superintendent Lamas on review of Pepe's grievance appeal. Further, the exhibits attached to Pepe's amended complaint reveal that he did not suffer any penalty arising out of the misconduct but for an informal reprimand and warning, which were subsequently nullified by Superintendent Lamas in upholding Pepe's appeal of his grievance. (*See* Doc. 33, at

14

9).[4] Thus, Defendant L. McConnell must be dismissed from this action, as Pepe's First Amendment claim against her is predicated upon an alleged retaliatory misconduct report that was later dismissed. Accordingly, this Court respectfully recommends granting Defendants' motion to dismiss (Doc. 32), as it pertains to Pepe's First Amendment retaliation claim against L. McConnell.

### C. DUE PROCESS CLAIM AGAINST WILBERT MATTHEWS

Pepe reasserts in his amended complaint a claim that hearing officer Wilbert Matthews violated his procedural due process rights under the Fourteenth Amendment by failing to hold the informal misconduct hearing in accordance with prison policies, and by acting in an unprofessional manner during the hearing.

---

[4] Specifically, in responding to Pepe's appeal of his initial grievance denial of his challenge to L. McConnell's issuing Pepe a misconduct for the unauthorized taking of food from the dining hall, Superintendent Lamas provided as follows:

> I . . . contacted Counselor Casner to see what sanctions if any you received for this misconduct and was told you received a reprimand and warning.
>
> I contacted Ms. Wyandt and she did confirm that you were in the library on 08/06/13 from 10:00 a.m. to 11:20 a.m. and were assigned a typewriter.
>
> I have also spoken with Mr. Dittsworth and advised him of the issue concerning you and Ms. McConnell and the fact that she had the wrong person, as you were in the law library as you said. I advised him to speak with Ms. McConnell concerning this. Mr. Dittsworth assured me that he would address this with her.
>
> This was a mistake made on the part of staff and it will be addressed.
>
> Based on the information provided, and further information obtained, it is my decision to uphold the inmate.

(Doc. 31, at 24).

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Att'y Gen. of U.S.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)); *see also Wolfe v. Pa. Dep't of Corr.*, 334 F. Supp. 2d 762, 773 (E.D. Pa. 2004); *Thomas v. Rosemeyer*, 199 F. App'x 195, 197 (3d Cir. 2006) ("In analyzing a due process claim, the threshold question is whether the complaining party has been deprived of a protected liberty or property interest."). In this case, Pepe has failed to identify in his amended complaint the imposition of any sanction, let alone a sanction that implicates a property or liberty interest sufficient to trigger the protections of procedural due process, but for his general complaint of being "black balled" from obtaining prison employment in food services.  To the extent Pepe contests the revocation of his work assignment as a deprivation of a property or liberty interest for which he is entitled certain due process protections, Pepe's claim must fail, as it is well established that inmates have no constitutionally protectable interest in prison employment. *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989) (recognizing that inmates have no constitutional right to be assigned to a particular job; an inmate's expectation of maintaining a specific prison job, or any job, does not implicate a property interest under the Fourteenth Amendment); *Bryan v. Werner*, 516 F.2d 233, 240 (3d Cir.1975) ("We do not believe that an inmate's expectation of keeping a particular prison job amounts either to a 'property' or 'liberty' interest entitled to protection under the due process clause."); see also *Fidtler v. Pa. Dep't. of Corrs.*, 55 F. App'x 33, 35 (3d Cir. 2002) ("[W]e have held that a state inmate does not have a liberty or property interest in prison employment."). As a consequence, Pepe has failed to state a claim upon which relief can be

granted. Accordingly, it is recommended that Defendants' motion to dismiss (Doc. 32) be granted with respect to Pepe's Fourteenth Amendment due process claim against Wilbert Matthews.

### D. LEAVE TO AMEND

The Third Circuit has acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000). "Denial of leave to amend a complaint is especially appropriate where a party has already been given the opportunity to amend the complaint." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (citing *Lake*, 232 F.3d at 373 ("[W]e are inclined to give the District Court even broader discretion when, as here, the court has already granted the requesting party an opportunity to amend its complaint.")). Here, this Court has previously granted Pepe leave to file an amended complaint. Despite the Court's alerting Pepe to the deficiencies in his pleadings and granting him leave to amend, however, Pepe failed to cure the complaint's pleading deficiencies. Thus, the Court finds that permitting Pepe leave to file a third complaint would be futile. Accordingly, it is respectfully recommended that Pepe not be granted any further leave to amend his complaint.

## IV. RECOMMENDATION

Based on the foregoing, it is recommended that:

1. Defendants' motion to dismiss Plaintiff's amended complaint (Doc. 32) be **GRANTED** with respect to the claims against Marirosa Lamas, R. Chism, and Wally Dittsworth for lack of personal involvement, and that these Defendants be terminated from the instant action;

2. Defendants' motion to dismiss Plaintiff's amended complaint (Doc. 32) be **DENIED** with respect to the First Amendment retaliation claim against Michael Prevost;

3. Defendants' motion to dismiss Plaintiff's amended complaint (Doc. 32) be **GRANTED** with respect to the First Amendment retaliation claim

against L. McConnell and that this Defendant be terminated from the instant action;

4. Defendants' motion to dismiss Plaintiff's amended complaint (Doc. 32) be **GRANTED** with respect to the Fourteenth Amendment claim against Wilbert Matthews and that this Defendant be terminated from the instant action;

5. Plaintiff be denied any further leave to amend his complaint; and

6. This matter be remanded to the undersigned for further proceedings.

**BY THE COURT:**

Dated: May 17, 2016                     s/ *Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

DAVID WILSON PEPE,

                Plaintiff,

      v.

MARIROSA LAMAS, et al.,

                Defendants.

CIVIL ACTION NO. 1:14-CV-02270

(CALDWELL, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **May 17, 2016**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: May 17, 2016

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**